## Miller *versus* Springer.

An executor and legatee, who, in certain legal proceedings had, in an answer filed as executor, treated the land devised by the will as that of the testator, in an action of ejectment brought against him as an individual, was held to be estopped from setting up an adverse title against the estate. In a second ejectment against him, he sought to avoid the effect of this decision, by showing that he had not participated in a certain act of his co-executor in returning the land for appraisement, and that he had not in fact accepted the deed vesting title in himself when said answer was made.    The court ruled the case on the authority of the first decision, and directed a verdict for plaintiff.    *Held,* that this was not error.

November 22d 1878.    Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Trunkey, JJ.    Woodward, J., absent.

Error to the Court of Common Pleas of *Fayette county :* Of October and November Term 1878, No. 237.

Ejectment by Jonathan D. Springer, one of the executors of the last will of Rachel Skiles, deceased, against Jacob B. Miller, another of said executors, who agreed in writing that the said action might be prosecuted by Springer alone, as though he was sole executor, in order to try the title to the property in dispute, which consisted of a certain tract of twenty-nine acres of land in Union township, Fayette county.    Defendant pleaded " Not guilty."

Both plaintiff and defendant claimed title under James Piper.

The plaintiff's paper title was made out as follows:

1. Judgment of Rachel Skiles *v.* James Piper, at No. 179, October Term 1854, for $448.69.    Entered September 18th 1854.

Fi. fa. issued January 1st 1857, and levied on land in dispute. Inquisition held January 30th 1857. Venditioni exponas to June term, and land given to plaintiff, Rachel Skiles.

2. Sheriff's deed to Rachel Skiles, dated July 1st 1857, and acknowledged same day. Consideration, $500.

3. Deed from Rachel Skiles to Jacob B. Miller, dated July 4th 1857. This deed is endorsed on sheriff's deed, and for the consideration of $1, sets out that Rachel Skiles has "assigned, released, and for ever quit-claimed unto him, the said Jacob B. Miller, his heirs and assigns, all my right, title, claim and interest in and to the within-described lots of ground," &c. Acknowledged July 6th 1857, but never recorded.

4. Deed of Jacob B. Miller to Rachel Skiles, dated September 12th 1857, acknowledged same day. This deed recites sale by Miller as administrator of Zadok Springer, deceased, to James Piper; sheriff's deed to Mrs. Skiles; that Mrs. Skiles had "assigned her interest" to Jacob B. Miller, and then Miller, for the consideration of $1, reassigns, remises, releases and quit-claims to Mrs. Skiles.

5. Quit-claim deed from Rachel Skiles to Ellis Baily, dated September 12th 1857, acknowledged same day. Written on same sheet with preceding deed. Consideration $2000. Both of these deeds witnessed by and acknowledged before J. D. Springer, the present plaintiff.

6. Deed from Ellis Baily and wife to Rachel Skiles, dated March 7th 1862, acknowledged the same day. Consideration, $2000.

7. Will of Rachel Skiles, dated May 15th 1860, with codicils dated respectively November 30th 1860, and March 8th 1865, in which she devises and directs as follows: "I give and devise unto Jacob Beeson, Jonathan D. Beeson and Henry Beeson, sons of Henry H. Beeson, all my outlot situate on the National road, west of Uniontown, adjoining Redding Bunting on the west, Everhart Bierer on the east, to them and their heirs for ever. All the balance of my property, both real and personal, I direct to be sold by my executors as soon after my decease as they may deem best for the interest of my estate, and the proceeds, after paying my just debts and necessary expenses, I divide as follows:" After a number of specific bequests, the will contains the following: "All the rest and residue of my estate I give and bequeath unto Henry H. Beeson, Jacob B. Miller and Jonathan D. Springer, to be equally divided between them." She appointed Jonathan D. Springer and Jacob Miller executors.

The defendant makes out his paper title as follows:

1. Mortgage from James Piper and wife to the American Life and Health Insurance Company, dated April 1st 1854, acknowledged April 18th 1854, and duly recorded same day, for this and other lands, to secure a debt of $1785.25.

[Miller v. Springer.]

2. Scire facias sur mortgage to June Term 1857, No. 108. Issued April 8th 1857. Judgment entered thereon June 2d 1857. Levari facias tested June 6th 1857, and the property in dispute sold to Alfred Howell, Esq., on the 10th of September 1857, for $350.

3. Sheriff's deed to Alfred Howell, dated September 15th 1857, acknowledged same day and recorded in sheriff's deed docket.

4. Deed from Alfred Howell, Esq., to Dr. Smith Fuller, dated January 5th 1865, acknowledged same day. Consideration, $500.

5. Deed from Smith Fuller and wife to John Gallagher, dated February 7th 1865, acknowledged same day. Consideration, $500.

6. Deed from John Gallagher to John Bruner, dated January 24th 1866, acknowledged the same day. Consideration, $500.

7. Deed from John Bruner to Jacob B. Miller, dated July 20th 1867, acknowledged same day. Consideration, $1.

These papers vested the Piper title in the defendant, Miller.

The plaintiff undertook to show that the defendant was estopped from setting up his legal title. For this purpose he attempted to prove, by a son of the plaintiff executor, that the testatrix had had possession of the premises.

He also gave in evidence the record of the Orphans' Court, at No. 43, March Term 1868—a proceeding by Henry H. Beeson, one of the residuary legatees of Rachel Skiles, deceased, to compel her executors to settle a supplementary account, and for a rule on them to show cause why they had not sold the land now in dispute. Both executors filed answers. The court excluded the answer of Springer, when offered in evidence by defendant. Upon the defendant's answer the court took the case from the jury and directed a verdict in favor of plaintiff. The plaintiff gave evidence also that the purchase by Dr. Fuller from Mr. Howell was made for defendant and with his money ; and also of declarations made by defendant to Dr. Fuller, as to his purpose in buying the Howell title. It also appeared that this land had been appraised as part of the estate of Mrs. Skiles, for collateral inheritance tax, that the tax had been paid on it, and credit taken by the executors in their account. Evidence was given that Dr. Fuller had conveyed to Mr. Gallagher, and Mr. Gallagher to John Bruner, by direction of defendant. Evidence was also given of certain payments of legacies, &c., by defendant, to show he acted as one of the executors of Rachel Skiles.

On the part of the defendant the following facts were proved :

1. That he had taken little or no part in the settlement of Mrs. Skiles's estate ; that he had made an agreement with the other executor to leave the active duties to him ; that Judge Willson, the attorney who had stated the account in which credit was taken for paying the collateral tax, was the attorney of the executor Springer only, and had taken his instructions from him and not from Miller ;

[Miller *v.* Springer.]

that the account was sworn to and presented by Springer, and not by Miller, he having nothing to do with it, or with the supplementary account.

2. That the defendant had had no agency in having the land appraised for collateral inheritance tax, and protested against it; that he had known nothing of its having been done until the trial in court of the case of Miller *v.* Skiles's Executors; that he knew nothing of the payment; that the appraiser was appointed at the instance of Springer, without Miller's knowledge, and that the tax was paid by Springer.

3. That the deed from John Bruner to the defendant had not been delivered to the defendant at the time he made his answer to the Becson rule to show cause why he should not sell this land, and that he did not then know of its existence.

4. That the purpose of having the several deeds made, conveying the Howell title, was to make a case that could be tried in the U. S. Court. Under what was considered the binding authority of Miller *v.* Springer et al., 20 P. F. Smith 269, the court gave the jury binding instructions to find for the plaintiff. Mrs. Skiles died in April 1865.

The court, Stowe, P. J., holding a special court, affirmed the fourth point of plaintiff as follows:

"That Jacob B. Miller, by his answer under oath, dated the 5th day of June 1868, and filed of record in the Orphans' Court, at No. 43, March Term 1868, in answer to a rule on the executors to show cause why they should not sell the land in dispute, claimed and admitted that the title thereto was in the said executors for the purpose of said sale; he at the same time holding the Howell title, is now estopped from setting up that title, and the plaintiff is entitled to recover."

And refused the following points of defendant :·

3. "That no acts or declarations done or made by the defendant in his representative capacity, as one of the executors of Rachel Skiles, deceased, will estop him from setting up and claiming his individual or personal rights, which are adverse to the estate of his testatrix; that the only acts or declarations done or made by the defendant which have been given in evidence by the plaintiff, which could estop the defendant, were done or made by him as executor in endeavoring to protect the interests of the estate, and cannot be used to estop him from setting up his individual title, which is adverse to the estate.

5. "That under all the evidence in the case, the plaintiff is not entitled to recover."

In the general charge the court said:

" The view we are compelled to take of the law of this case, will make your duty a very simple one. This case, or at least a case involving all the questions that are contained in this case, between

[Miller *v.* Springer.]

some of the same parties, has been in the Supreme Court; and their decision upon the points involved, which govern the case as it now stands, is conclusive. There is no appeal from that decision, so far as we are concerned, at least, and it is equally binding on court and jury. If the Supreme Court, if it go there again, see fit to change their view, they have the power to do so, and can reverse us for saying to you now, just what they have decided we must say to you. But until they do reverse it, we are bound under our oaths to accept the law from them, and direct you accordingly. Then to simplify this case, [we instruct you that under the evidence in the case the plaintiff is entitled to your verdict. This affidavit or answer that was filed by Mr. Miller, in reply to a citation in relation to this property, the Supreme Court have said, put him in such a position as that his mouth shall be for ever closed from setting up any title that he may have to the land in dispute. And assuming that it was a good title, as the evidence would seem to indicate in this case, yet by his own act the Supreme Court says he has put himself in a position where he will not be allowed to set up that title as against the title set up by the plaintiffs, representatives of Mrs. Skiles. Therefore, as a matter of law, we instruct you that it is your duty to return a verdict for the plaintiff under all the evidence in the case."]

The answer of Jacob B. Miller, of June 5th 1868, referred to above in the fourth point of plaintiff and in the charge, was an answer of Miller, as executor of Rachel Skiles, deceased, to a rule upon her executors to show cause why the real estate of said decedent should not be sold, and was as follows:—

"Jacob B. Miller, one of the executors aforesaid, in answer to the rule in this case, says that the title of the said Rachel Skiles to the property aforesaid is in dispute; that the same was sold on a judgment of Rachel Skiles against James Piper, and purchased by her in her lifetime; that at the same term of the court it was sold on a judgment sur mortgage against James Piper, aforesaid, and purchased by Alfred Howell, Esq.; the title of said Howell was afterwards vested in one John Bruner; that ejectment in the name of said Bruner was afterwards brought in the Common Pleas of Fayette county against the executors of Rachel Skiles and H. H. Beeson, for the recovery of said real estate; that the cause was down for trial at January adjourned court last; that when the cause was reached, John H. Hampton, attorney for Bruner, asked for a continuance of the same, as he was compelled by other more urgent business to return to his home in Allegheny county. The court, not deeming this sufficient cause for a continuance, refused to continue the same. Whereupon the counsel, as this respondent supposes of Henry H. Beeson, the mover of the rule in this case, compelled the plaintiff to take a nonsuit. The cause, otherwise, might have been, and probably would have been, tried at March

208 SUPREME COURT [*Pittsburgh*

Term last. Since then the said Bruner has brought ejectment for the real estate in question, in the Circuit Court of the United States, for the Western District of Pennsylvania, against the executors aforesaid and Henry H. Beeson, which will probably be tried at the next regular term of said court.

"Under these circumstances, the respondent is of opinion that, while the title to the property in question remains unsettled, it cannot be sold except at a great sacrifice. The respondent, therefore, is of opinion that, as the will of the said Rachel Skiles provides that the real estate of the deceased should be sold by her executors at such time as they shall deem best for the interest of the said estate, the discretion thus imposed upon them, requires them not to sell the said real estate before the title to the real estate in question shall be settled."

The verdict was for the plaintiff, and defendant took this writ assigning for error the answers to the above points, and the portion of the charge in brackets.

*Boyle & Mestrezat* and *Minor & Parshall,* for plaintiff in error.—Miller made his affidavit as executor of Mrs. Skiles. He was not called upon to speak as an individual, and did not so speak. As an individual, he would not be estopped by anything he may have said or done as an executor, nor would he be refused a hearing were he to attempt to deny as an individual what he had affirmed as an executor: Bell's Estate, 1 Casey 92; Robbins *v.* Bellas, 2 Watts 359; McMichael *v.* McDermott, 9 Harris 353; Warden *v.* Eichbaum, 2 Id. 121; Bigelow on Estoppel 65, 243.

*D. Kaine* and *Daniel Downer,* for defendant in error.

Mr. Justice MERCUR delivered the opinion of the court, January 6th 1879.

The learned judge ruled this case on the authority of 20 P. F. Smith 269. That case was between the same parties, and for the same lands.

In this second action of ejectment, the plaintiff in error sought to avoid the effect of that decision, by showing he did not participate in returning the land to be appraised for the payment of a collateral inheritance tax; and also that he had not in fact accepted the deed from Bruner, at the time of making his answer, of 5th June 1868, under oath. The substantial and uncontradicted facts, however, were again shown. The purchase from Howell was made at the request, and with the money, of the plaintiff in error. The subsequent conveyances by which the legal title was transmitted to Bruner, were without the payment of any consideration, and for the purpose of putting the title in a citizen of another state, to enable suit to be brought in the Circuit Court of the United States.

The mere fact that he had not accepted the deed from Bruner at

[Miller *v.* Springer.]

the time of his answer, does not change the effect of the latter. The title was held for his use and benefit; besides it is not an unreasonable presumption that the deed from Bruner was actually handed to him by Alex. Miller, before the time of the answer. It is true he declined to receive it then, to avoid the effect of a change of title, on the suit pending in Bruner's name; yet he left it apparently subject to his call. Bruner treated it as a conveyance, and as soon as the plaintiff in error requested it was delivered to him. Substantially then we think he stands on no firmer ground than on the former trial.                                    Judgment affirmed.